May it please the court, my name is Bruce and I represent the Appellants and Defendants, the City of Rockland, the Chief of Police Mark Siemens and the City Manager Carlos Urrutia. Your Honors, five of the six claims in this employment lawsuit are gone, either summary adjudication or dismissed on the pleadings. The only claim that remains is titled equal protection, at least that's the theory attached to it. But the opposition brief and the allegations by the plaintiff are clear that this is retaliation or speech. We would submit, Your Honors, that the District Court erred in denying qualified immunity in summary for three reasons. One, there's just no evidence in the record of a violation of law where the District Court has looked at all of the grounds for the termination and decided there were lawful reasons. The City exercised its discretion in promoting the good order and efficiency of the Department in summarily adjudicating the First Amendment claim, which is retaliation based on speech. Second, the purported class itself is so broad and amorphous that it does not comply with the strict limitations set by inquest for a class-based equal protection claim. Well, what I understand former Officer Eaton to be saying is that in the Rockland Police Department there were two groups, some bad people who did a lot of bad things, and he was not in that group, and his group, which was people who wouldn't go along with what the bad group, if I can call it that, wanted to do. And you think that's amorphous? Well, I think it's not discreet, and it certainly is not objectively identifiable. The three cases cited by the inquest case, the Supreme Court identified disqualifying factors in the face of the rule. Age, we know that when we see it. There was another case about... It's not race, it's not age, it's not gender. Correct. In this case, Your Honor, there are two ways to look at this which would invalidate the purported class. One is, when you think of retaliation, it is a subjective intent. It requires subjective intent to retaliate, to act based on certain facts. That is anathema, or irreconcilable with objectively identifiable. So in this case, you're going to have to have a series of mini-trials for anybody to come on. One, to establish factually that they engaged in protected speech, and even if they did, that they were retaliated against because of that, which requires a subjective intent. Also, when you think of team players and non-team players in public employment, you actually reward team players, particularly in a paramilitary organization, such as the police department, and it promotes the good order and efficiency of the department. And as Inquis makes clear, public employment decisions all the time are based on drawing distinctions between individuals. In this case, the district court viewed it team and non-team. But then when you look at the pleadings themselves, they're all over the place. And they're not discrete. One would be police officers who refuse to participate in criminal activity. When you think of that, that's everybody in the police department because they are hired to not be... Well, he says a little bit more than that. He says that the police chief used his car for personal reasons, and he cites some other stuff. Well... Right? He does. But that, as the district court found, was not protected because in a police organization, one can disclose violations of law, even go outside the department to disclose violations of law. But he wasn't terminated for that. He also says that he reported to the new police chief that his own supervisor had an unrevealed criminal conviction. Well, that was not unrevealed. That had been vetted in the department five years earlier. And, in fact, Mr. Eaton admitted in an underlying grievance hearing and in deposition, he knew it for five years when he gave this Lieutenant Newman glowing reviews and performance evaluations. He wasn't terminated for that. He was terminated for disparaging the department later in the context of his own grievance hearing for sexual harassment, that this officer shouldn't have even been hired. And he pointed out to another officer, use Lieutenant Newman as a comparative to challenge discipline within the department. That's not protected speech, Your Honor. That falls way outside his purported class. Does the record tell us how large the department is in Rockland? It doesn't, and I wouldn't be speculating. That's fine. I have a pretty good feel for it, but I couldn't tell you. So your argument is, A, the group is too amorphous for equal protection claims, and, B, there's no connection between any, for lack of a better description, whistleblowing and the reasons for which the officer was discharged. Correct. And even if there were such a class, Your Honor, which we believe is far outside the bounds of inquest, he's not part of the class. Got anything more you're dying to tell us? I'm sorry? You got anything more you're dying to tell us? Well, I wanted to. I do, but I get the idea behind your question. I do want to make reference, however, to the 28-J letter that we submitted, which does go to the second prong of saucier. The first prong is, was there a constitutional right that was violated? The second prong would be, was the right clearly established, even assuming there was a violation of the right? And the district court simply got it wrong when it said there is a basic right of equal protection in public employment, citing to the Willowbrook case. And as this circuit decided prior to the Supreme Court that the class of one is not the rule of law in the Ninth Circuit, has it been, and the Supreme Court stated the same thing. It's just simply not well established. But the 28-J letter, we cite a district court case out of Arizona after the briefing. Now, I understand district court cases are not biting on this court, and it's not a published case, however. Yeah, sometimes they can be helpful. Well, they're helpful in this case, Your Honor, because that case cites three circuit court cases outside the Ninth Circuit, and those cases cite other circuit court cases. You couldn't have found those three cases without the unpublished decision from the district court of Arizona? I'm sorry? I said you couldn't have found those three circuit cases without the help of a district judge in Arizona? Well, I'm embarrassed to tell you that I could have, but I didn't. Okay. I'll be up front with you, but it does go to the argument about whether the law was well established. Five circuit courts outside the Ninth Circuit have held that retaliation finds no support within the equal protection clause. There is constitutional support and protection for retaliation, and that would be in the First Amendment here, which has already been summarily adjudicated, or in statutes such as Title VII, where there are retaliation prongs, and other statutes as well protecting employees in public employment, but not in equal protection. I would reserve the balance of my time for rebuttal. So your point is that it has not been clearly established that it is an equal protection violation to retaliate against a public employee? So say five circuit courts, Your Honor, yes. The other issue, though, the district court got it wrong when it said that Willowbrook was well established in public employment, Willowbrook, as you know, is a land-use regulation, and this court stated it is not fit within public employment, just not a good fit. And the district court stated the same thing. The court said we have long held that government acting as a rulemaker or legislator has fewer rights than government acting as a proprietor to manage the internal affairs of the government or acting as an employer. And also, Your Honors, I want to point out about whether the rule is firmly established. The other rule there is whether a reasonable public official would have been on notice, given the circumstances that it was confronted, that it was violating a constitutional right. A constitutional right or equal protection? In this case, it would be equal protection. Would it be enough to know that he was violating a constitutional right? Yes, I agree with that. In this case, however, the district court got it wrong when it said there was a basic right again to equal protection when it has never been firmly established under Willowbrook that there is a class of one. But in this case, you have a... Counsel, Judge Gould, if I could ask you a question. I get a little off track with the characterization of this as a class of one because I thought he said he's in a group, like the group who won't go along with the bad stuff, to use Judge Hawkins' phrasing earlier. So if he says he's in a group that's discriminated against, why are we viewing it as a class of one? Well, the district court viewed it as a class of one. We're saying that the district court was in error in stating that class of one was firmly established. But I would go further to say that speech-based retaliation, which this is in the context of equal protection, was not firmly established. And it's one thing to say there was this grouping or classification, but you have to have evidence to support that. And we're saying that there is no evidence in the record based on the court's summary adjudication of his speech-based retaliation claim that he would be a member of the class where there was a fact-finding by a neutral arbitrator who issued a decision that affirmed all six grounds for termination. The city manager reviewed that and clearly was within his discretion to affirm a termination recommended by a neutral who had looked at all the evidence in an evidentiary hearing, in an adversarial evidentiary hearing. Carlos Yerusha clearly was not acting unreasonable in his position as a city manager when he relied on facts found in a recommended decision of termination based by Mr. William Riker. After seven days of hearing where over 1,000 pages of sworn transcripts and almost 20 witnesses testified. I just wanted to say that I believe it's irreconcilable that there was a violation of law or that the officials here acted unreasonably where the district court looked at the grounds for termination based on an undisputed factual record and stated that there was actual evidence of disruption in the police department by this officer and that the officials and the city acted within their deference given to maintain the good order and efficiency. Now one of the reasons given or adjudicated at the administrative hearing for the termination involved any whistleblower allegation. I think you're getting past qualified immunity. Thank you. Good morning, your honors. James Ashworth on behalf of the plaintiff and appellee, Rick Eaton. I must respectfully disagree with the characterization of the district court's opinion. It is not plaintiff's position that he is a class of one and that is not what the district court held. We are held that he is part of a class and that that is exactly what the district court agreed with. Also the characterization that is used that it is a class of the team players or bad players or kind of the good guys and the bad guys, that is not our definition of the class. Our definition of the class is that anybody who spoke up and raised concerns about illegal activity and inappropriate activity or filed complaints that could potentially embarrass or paint the chief in a bad light were basically run out of the department. I know this is not a wrongful discharge case, but I wonder if the methodology by which we analyze those cases might be helpful here in focusing upon the concern I have. Let me tell you what the concern is up front. The concern is I don't see a connection, and if there is one I hope you'll tell me, between his activities and what happened to him in the disciplinary process. Let me finish. In the employment context what typically happens is somebody says, I was discharged because I'm a member of a minority group or because of gender or because of age or whatever. Then the employer comes back and says, not so. This person was discharged for a cause, and here's the reason, and it appears to be a well-grounded reason. The employee then has the opportunity to establish whether the stated reason was pretext or not. In this circumstance it seems like looking at both the arbiter who dealt with the suspension and the arbiter who dealt with the discharge found sustainable reasons for discharge that I'm having a hard time connecting to any whistleblowing kind of activities. So help me with that. I think the McDonnell-Douglas test is a great thing to use here. I think looking at the pretext argument is exactly what we should be looking at. Tell me why suspending an officer who makes sexually inappropriate comments to a fellow female police officer about her anatomy is not a basis for suspension. I think it can be a basis for suspension. I think under the circumstances here and the context and totality of what was going on there in comparison to others, it was completely exorbitant compared to what was going on with others. Now as you may be familiar, when you're down in that type of a hearing, you don't get to bring up the other people's conduct. So that person is looking at this one thing that is going on. The exact same thing with termination. Did something about his whistleblowing cause him to make these comments? No, the comments were made years earlier, and the woman herself said that she didn't feel harassed or bothered by any of them and didn't file a complaint. One of the things that concerns me here is we are now delving deep into a factual argument or discussion that we're not supposed to be doing on a qualified immunity argument. We're supposed to be talking about whether or not it implicates a constitutional argument. Well, why don't you tell us why the stated reasons, as sustained by both the arbiters, were pretext? I think the primary evidence that shows that this is the case is the fact that certain individuals were labored by the chief as non-team players, and these were the individuals that essentially filed complaints and raised issues of concern about the chief and his immediate supervisors right beneath him about some improper activities and sexual harassment and some other things. Each of these individuals came under a heightened scrutiny and were basically barraged with investigations and other things that resulted in either them being terminated or them resigning. Was Tia Bosnian one of these? Yes. Was she a police officer? She was not, but all of these were employees of the Rockland Police Department. Okay. Freda Anderson? Yes. Was she a police officer? She was not. She was an animal control officer, right? Correct. But all of them employees of the Rockland Police Department. And Nancy Muir? No, she was not a police officer yet. She was looking to go to the academy. But once again, the commonality is not that their position was the same. It's that they were all employed by the Rockland Police Department. Each of them raised issues concerning inappropriate conduct or possibly illegal conduct really on the part of the chief. And when this happened, they became under this heightened scrutiny. Now when you have these individual employment actions that come out, you can't bring up the totality of the circumstances in one of these arbitrations because you've got all of these POBAR rights and other things that are protected. So all they're looking at is this one event. This court will for the first time be looked at the totality of what is going on in this police department. And that is that individuals are being singled out because they're refusing to participate in what they believe is illegal activities or they are pointing out where other inappropriate conduct is occurring. But once again, I'm concerned that we're starting to delve into a factual discussion which I think is not appropriate at this stage of this proceeding. Are there cases in which you're aware that establish the fact that a discharge in retaliation for complaints constitutes an equal protection violation? No. This is a very new area of the law in some of these in terms of the equal protection evaluation of this. And I don't think that there are any that are directly factually on point. It's not race, it's not gender, it's not age. And by the way, if you agree with that Seventh Circuit opinion, if it was age, race, or gender, it would fall under Title VII, so that couldn't be equal protection either. And if you believe with the Fifth Circuit, well, let's face it, equal protection doesn't exist if you buy that. There is no group category where it wouldn't fall into something else. As we all know, the point of... Well, it doesn't matter whether it falls into something else. It can be a Title VII violation and an equal protection violation. Actually, according to the Seventh Circuit, it can't. Well, that may be. But the question is, is there anything that would allow a reasonable officer to know that it's an equal protection violation to retaliate against an officer for complaints? I do not believe that an officer needs to know which constitutional violation that it is. And I think that this Court, the Ninth Circuit, was very clear in Elliott Park, the case decided last year, that nobody has to be a legal scholar or a constitutional scholar and know that if I do this, well, that could implicate due process, or this could implicate property. But you have to know that it's a violation of a constitutional right. That's right. And here, the Court found that there was no violation of the First Amendment? Well, they basically found that the totality of the circumstances fell under equal protection. This is exactly why it is virtually impossible to engage in this argument at this time. And that is that we had issues that we lost down at the summary judgment phase. And then we had one that we won. Now, we can't cross-appeal on the ones that we lost now because my client doesn't have qualified immunity. So what we are now doing is arguing half the merits of a motion for summary judgment. I would love to tell you, you're right, it can fall under First Amendment, it can fall under equal protection. But in essence, the fact that it didn't fall under First Amendment for other reasons down below, it now can't be used as an equal protection here, we're arguing a piece of this. And that's not what we're supposed to be doing on qualified immunity. Can you ordinarily make an equal protection claim out of the notion that you can't discipline me because I did A because other people who did A weren't disciplined? Yes. And what's your best authority for that? Well, I mean, as far as an equal protection, I don't have that falling under a case directly on that or on that particular issue. But what we have is we have a number of employment cases where they say this group falls into a category. But I think Your Honor was exactly right in that usually the equal protection is based in something else. So somebody violates an individual's First Amendment rights and that is a First Amendment violation. And then what happens is if they violate a group of individuals' First Amendment rights, that becomes an equal protection. So as an example, in that case that recently came out down in Arizona, the Byrne case, they actually didn't say you can't have an equal protection argument for First Amendment. That's not what they held at all. What they said was, and I mean, I'll read directly from it. It says that in that particular case, it said, plaintiff's equal protection claim is based not on his membership in an identifiable class, but on his allegation that he was treated differently in retaliation for his speech. Such claims implicate First Amendment, not equal protection. He didn't try to be part of a group. He didn't say he was part of any group. He just basically pled in equal protection on top of his First Amendment. And this case says, in that instance, you didn't plead equal protection. You haven't named an identifiable group. We have named an identifiable group. The district court has found that there's an identifiable group. And so we believe that this falls both under First Amendment and under equal protection, and that's why we pled both of them. We also believe that it fell under a taking of property. But once again, we're now up here at the Court of Appeals, and I don't get to argue my First Amendment claim and my taking of property claim anymore. I'm left with what the district court found was the most appropriate of the three, which he felt was the equal protection argument. And that's why we're in a near-impossible situation arguing a small piece of a totality of a motion for summary judgment. And so, I mean, if these qualified immunity cases are going to be handled this way, and this Court says, you know, this really is more of a First Amendment, then we go back down and we've got to reappeal, back up. This is why we're not supposed to be redoing the summary judgment other than the qualified immunity claim right now. It's impossible. We'll literally be going back and forth between this Court and the district court, I don't know, for another five or six years. We've already been doing it for six years. That's why qualified immunity under Johnson v. Jones says you do not make those types of factual inquiries at this phase. All you do is determine, is there a constitutional implication here? Well, equal protection, there is. And nobody has to be a constitutional scholar to know that. When you basically, as a public entity, when your agents go out and punish people for exercising their legal rights and exercising their constitutional rights, and you punish them for that, you know you're violating the Constitution. You may not know it's equal protection, you may not know it's First Amendment, you may not know it's due process, or by firing it's taking a property, that doesn't matter. You know what you're doing is wrong, and you know it's a constitutional violation. And that's exactly what this Court held in Elliott Park just last year. You don't have to know the specific legal violation, but you know this is wrong, and that's the instance in this case. Thank you, counsel. Is there any other questions I could answer? I have no questions. Thank you. Briefly in rebuttal, Your Honors, Judge Hawkins, you asked, where's the whistleblower claim when you ask to see a subordinate officer's, female subordinate officer's breast while you're supervising her alone in a police car about 1230 in the morning? There is none. That's the answer you didn't get. That's not whistleblower. You also asked, where's the evidence of pretext here for the grounds that were cited by... Well, suppose you have a good reason to discharge, and ten people are not discharged for the identical act, ten people are not discharged who are friends of the chief of police, support him politically, and ten people who are discharged for that act who oppose the chief of police. Then what difference does it make what the act is for which you're discharged? Well, those aren't the facts here, but theoretically... I know, but you gave facts about a person that they might have had reason to discharge or suspend, and you say, what does equal protection have to do with it? Well, I would... I'm sorry. So my question was, is it an equal protection violation if, for that same act, friends of the chief are not fired and opponents of the chief are? I would say that's wrong. I don't think it elevates itself to a constitutional challenge here, particularly in public... And this court stated that treating like individuals differently is an accepted consequence of discretion. Granted, where you have repeated acts of insubordination, and not whistleblower, but where you express your dissatisfaction with the department during working hours, this circuit is stated in a pool case in Canisto, that that's not protected, and that's what we have here. I would go back... Let me respond on the pretext. Judge Hawkins asked, where's the pretext for the adjudicated basis for the termination? The response you got was, look at these other people who were treated unfairly. That's not evidence of pretext as to Mr. Eaton. And when you look at what the others are complaining about, only one of whom was a police officer, and he wasn't a police supervisor who groused to subordinates in briefings. They state, I think I was treated unfairly. I think I was harassed. Speculation on its face. One of them, Tia Bostian, filed a lawsuit, which resulted in a final adjudication where it was found that she was not retaliated against. She lied in an internal affairs investigation and misused confidential information. Lastly, the argument that equal protection doesn't exist, if you reverse the district court, equal protection does exist, but not in this case, where you have retaliation for speech. That's a First Amendment violation, and that has been already summarily adjudicated based on undisputed factual records. Well, you know, this does give you a problem when an opponent says that they haven't had a chance to appeal that yet, and they don't believe that that judgment was correct, and they shouldn't be penalized at the qualified immunity stage because they haven't had a chance to argue that that summary judgment was wrong. Well, they did have a chance to argue it in the district court in Loss, and they will have a chance to argue it here on the merits of a First Amendment claim. Yes, and if we supposedly reverse the summary judgment on a First Amendment claim, what effect does that have on the qualified immunity argument? I think you said it didn't matter which constitutional violation it was for equal protection purposes here. Well, we'd be able to argue qualified immunity in the context of First Amendment, certainly, but that's not before the court here. What the plaintiff's trying to do is put a square peg in a round hole. It's just the equal protection clause for retaliation. Speech-based retaliation just doesn't exist. It's a First Amendment issue, and that's been determined. And if he wants to appeal that to the Ninth Circuit, he has that right, and we'll deal with it at that time. Thank you, Your Honor.  Take a break? The case just argued will be submitted. The court will stand in recess for a brief period. Thank you. All rise. The court stands in recess.
judges: Reinhardt, Hawkins, Gould